# United States Court of Appeals
Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

For rules and forms visit
www.ca11.uscourts.gov

October 30, 2009

Steven M. Larimore
Clerk, U.S. District Court
400 N MIAMI AVE RM 8N09
MIAMI  FL  33128-1813

FILED by __ D.C.

NOV - 5 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

**Appeal Number: 09-12121-GG**
Case Style: Jin Zhi Star Lt. LLC v. American Zurich Insurance
District Court Number:  08-61191 CV-FAM

The enclosed certified copy of this Court's Order of Dismissal is issued as the mandate of this court. See 11th Cir. R. 41-4.  Counsel and pro se parties are advised that pursuant to 11th Cir. R. 27-2, "A motion to reconsider, vacate, or modify an order must be filed within 21 days of the entry of such order.  No additional time shall be allowed for mailing."

Also enclosed is the record on appeal, which consists of:
 6 volumes/2 folders of exhibits

The district court clerk is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: Tonya Richardson (404) 335-6176

Dismissal applies to main & cross-appeal.

Encl.

DIS-4  (4-2009)

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-12121
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 3 0 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-61191-CV-FAM

JIN ZHI STAR LT. LLC,

U.S. CAPITAL/FASHION MALL, LLC,
a Florida Corporation,

                                                        Plaintiffs-Counter

Defendants-Appellants-
Cross-Appellee,

versus

AMERICAN ZURICH INSURANCE COMPANY,
An Illinois Corporation,

                                                        Defendant-Counter
Claimant-Appellee-
Cross-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

Before BLACK, PRYOR and FAY, Circuit Judges.

PER CURIAM:

In this insurance dispute between Jin Zhi Star Lt., LLC and US Capital/Fashion Mall LLC ("plaintiffs") and American Zurich Insurance Company ("Zurich"), both parties appeal from a different portion of the district court's "final judgment." However, for the reasons set forth below, we conclude that, despite the label, the district court's judgment is not a "final decision" under 28 U.S.C. § 1291, and we accordingly dismiss the plaintiffs' appeal and Zurich's cross-appeal for lack of jurisdiction.

## I.

After its commercial property sustained damage during Hurricane Wilma in 2005, the plaintiffs, invoking the diversity jurisdiction of the district court, filed the instant declaratory action against Zurich. In Count One of their complaint, the plaintiffs sought a declaratory judgment compelling appraisal of the damage sustained, pursuant to an appraisal clause in the insurance policy.[1] In Count Two,

---

[1] The appraisal clause provided:

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire.

2

the plaintiffs sought a declaration that the applicable deductible under the policy was $10,000.

Zurich raised several affirmative defenses to Count One, including that: the plaintiffs' invocation of the appraisal clause was premature because they failed to fulfill pre-conditions set forth in the insurance policy; the plaintiffs waived their right to invoke the appraisal clause because they waited too long to do so and, similarly, were barred by the doctrine of laches; the plaintiffs were estopped from presenting their insurance claim because, two years earlier, they informed Zurich of their intent to withdraw the claim "because the damages caused by Hurricane Wilma would not approach the agreed $5,000,000 deductible;" and the plaintiffs were not entitled to coverage under the policy because, by now estimating the damage at approximately $18 million, they fraudulently concealed and misrepresented material facts, materially breached the contract, and had unclean hands. Zurich filed a counterclaim with respect to Count Two, seeking a

---

A decision agreed to by any two will be binding. Each party will:

a.  Pay its chosen appraiser; and

b.  Bear the other expenses of the appraisal and umpire equally.

<u>If there is an appraisal, we will still retain our right to deny the claim.</u>

(Emphasis added).

3

declaration that the plaintiffs' deductible under the insurance policy was $5 million, not $10,000.

The district court ultimately set the case for a bench trial, ordering the plaintiffs to present their case on March 11-12, 2009, and Zurich to present its case on March 30-31, 2009. After the plaintiffs presented their case on March 11, the district court orally suggested that the hearing scheduled for March 30 would be limited to a disputed factual issue pertaining only to Count Two, namely, whether the deductible in the insurance policy delivered to the plaintiffs was $10,000 or $5 million.

Zurich filed a motion for clarification "of the court's <u>ore tenus</u> order concerning limited presentation of defendant's case on March 30, 2009," seeking to confirm "[t]hat all claims and defenses . . . , <u>other than policy delivery</u>, will be tried later upon further order of the Court unless otherwise rendered moot[.]" The district court granted Zurich's motion, stating that "[t]he March 30, 2009 trial is only on the issue concerning delivery of the insurance policy."

After the court heard live testimony and legal argument regarding the deductible issue on March 30, the court issued a ruling. The court began by setting out the background of the case, and, in doing so, reviewed Zurich's affirmative defenses to Count One. Switching gears, the court then found that the applicable

4

deductible in the policy was $5 million. Despite previously limiting the hearing to that issue, the court went on and further determined "that the plaintiffs are indeed entitled as of today to the appraisal process called for by the contract . . . ." The court then concluded:

> Therefore, I'm entering final judgment in favor of the plaintiffs finding that the dispute concerning the amount of [damage caused by] Hurricane Wilma shall be resolved in the appraisal process. The Court rejects the defendant/insurer's defenses of fraud precluding appraisal and finds that the insured's demand for appraisal was made on a timely basis neither too late nor too soon as claimed by the defendant/insurer.
>
> The insured [h]as complied with the [policy's] conditions; therefore, the appraisal clause of the insurance contract shall be enforced; but the contract's valid deductible . . . is $5 million . . . .
>
> And that's my ruling. I'm not going to enter a written opinion. All I'm going to do is enter final judgment in favor of the plaintiff on the appraisal . . . .

Counsel for Zurich attempted to object on the ground that the deductible issue was the only issue before the court, but the court interrupted: "I know; but this is my ruling. And the law allows me to do it when I've heard all the testimony just like I can grant summary judgment. I'm taking everything into consideration. If there's any error on this, go to Atlanta before the Court of Appeals."

Accordingly, the court entered a "final judgment," compelling the parties to complete an appraisal, and finding that the applicable deductible was $5 million.

5

The court further stated that, because it would appoint an umpire for the appraisal process if the parties could not agree on one, it was "retain[ing] jurisdiction until the end of the appraisal process."

Zurich filed a motion to alter the judgment or, alternatively, for a new trial, pursuant to Fed.R.Civ.P. 59(e). It argued that, because the court entered a final judgment (as opposed to an order) compelling appraisal, the judgment "may give the impression that Zurich is foreclosed from presenting its coverage defenses in any future action," which would be inconsistent with the court's previous rulings; accordingly, Zurich requested that the court eliminate the reference to Count One from its judgment – thereby transforming it into a partial judgment, addressing only the deductible issue in Count Two – and enter an order compelling appraisal, "but clearly allowing Zurich to present its defenses in any later coverage action . . . " Alternatively, Zurich requested a new trial so that it could present its affirmative defenses to Count One; in this regard, Zurich outlined the evidence that it would present to support its defenses — particularly, its assertions that the plaintiffs' invocation of the appraisal clause was premature, and that the plaintiffs were not entitled to coverage due to fraud. The district court summarily denied the motion.

Both parties appealed from the district court's March 30 judgment. The plaintiffs appealed from the court's ruling on Count Two that the deductible was $5 million; Zurich cross-appealed from the court's ruling on Count One compelling appraisal, as well as from the court's denial of its Rule 59(e) motion.

The plaintiffs subsequently filed in this Court a motion to dismiss Zurich's cross-appeal, asserting that the district court's ruling compelling appraisal was not final and therefore not subject to review. Zurich responded that, although unclear, it appeared that the district court's March 30 judgment was final and therefore appealable because, "as the case now stands, the district court has nothing left to do." However, Zurich asserted that, if this Court concludes that the judgment is not final, it should dismiss the plaintiffs' appeal in addition to Zurich's cross-appeal.

## II.

"We review jurisdictional issues de novo." Adams v. Monumental Gen. Cas. Co., 541 F.3d 1276, 1277 (11th Cir. 2008). "As a general rule (subject to exceptions not implicated by this case), federal courts of appeals have jurisdiction

to review only 'final decisions' of lower federal courts."[2] U.S. Sec. Exch. Comm'n v. Carrillo, 325 F.3d 1268, 1272 (11th Cir. 2003) (quoting 28 U.S.C. § 1291). "[A] district court order is considered final and appealable only if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." W.R. Huff Asset Mgmt. Co., L.L.C. v. Kohlberg, Kravis, Roberts & Co., L.P., 566 F.3d 979, 984 (11th Cir. 2009) (citing Catlin v. United States, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). "If a party seeks to appeal a district court order that does not constitute a 'final decision' under § 1291 (and does not fall within an exception to the final judgment rule), we must dismiss the case for lack of appellate jurisdiction." Carrillo, 325 F.3d at 1272.

### III.

The threshold jurisdictional issue presented by this case is whether the district court's judgment entered on March 30 is a "final decision" for purposes of § 1291. Specifically, the dispute centers on whether the portion of the court's ruling compelling appraisal was final. As an initial matter, it is noteworthy that, while Florida law treats orders compelling appraisal as non-final (though

---

[2] The three judicially created exceptions to the final judgment rule are: 1) the collateral order doctrine; 2) the doctrine of practical finality; and 3) the exception for intermediate resolution of issues fundamental to the merits of the case. See Atlantic Fed. Sav. & Loan Ass'n of Ft. Lauderdale v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 375-76 (11th Cir. 1989) (discussing these exceptions).

8

appealable) orders, see Fla.R.App.P. 9.130(a)(3)(C)(iv), whether the district court's judgment in this case is "final" under § 1291 presents a question of federal law. See Budinich v. Becton Dickinson and Co., 486 U.S. 196, 198-99, 108 S.Ct. 1717, 1720, 100 L.Ed.2d 178 (1988) ("Although state law generally supplies the rules of decision in federal diversity cases, it does not control the resolution of issues governed by [§ 1291]") (citations omitted).

The record below indicates that the district court intended its judgment to be final, as evidenced by the fact that the court labeled it a "final judgment," purported to resolve both counts of the complaint (and Zurich's counterclaim), invited Zurich to appeal its ruling to this Court, and summarily denied Zurich's Rule 59(e) motion. Indeed, in subsequently issuing an unrelated report and recommendation, the magistrate judge stated: "[The district judge] clearly intended his Final Judgment to be final. He said as much when he stated that any party who disagreed with his ruling could apply to the appellate court for relief."

Significantly, however, it is the law of this Circuit that the district court cannot transform a non-final judgment into a final judgment by erroneously labeling it as such. Gen. Television Arts, Inc. v. S. Ry. Co., 725 F.2d 1327, 1331 n.5 (11th Cir. 1984) ("Unfortunately for the appellant, the district court's mistake does not help him because a district court mislabeling a non-final judgment 'final'

9

does not make it so."); accord Stillman v. Travelers Ins. Co., 88 F.3d 911, 914 (11th Cir. 1996) (same). However, the district court in this case did just that because, as explained below, it failed to recognize that, under Florida law, it had more to do after entering its judgment on March 30.

In interpreting insurance appraisal clauses, Florida courts have made clear that the amount of loss is determined by the appraisers, while the issue of coverage is determined by the courts. E.g., Johnson v. Nationwide Mut. Ins. Co., 828 So.2d 1021, 1025-26 (Fla. 2002). As a result, insurance companies have included "retained rights" provisions within appraisal clauses, the purpose of which "is to state, quite simply, that if the insured requests an appraisal and the insurer proceeds with the appraisal process, the insurer has not thereby abandoned any coverage defenses which may be available to it." State Farm Fire & Cas. Co. v. Licea, 685 So.2d 1285, 1287 (Fla. 1996) (quotation omitted); see id. at 1288 ("hold[ing] that the appraisal clause at issue is not void for lack of mutuality of obligation simply because of a retained rights clause, where we interpret the clause as retaining only the right to dispute the issues of coverage as to the whole loss, or whether the [usual] policy conditions have been violated"). Thus, the following post-appraisal procedure applies where, as here, there is a retained rights provision:

> [T]he procedure that Florida courts use (and have seemingly used for more than the last thirty years) is to allow the insured to petition or

10

> move for confirmation of an appraisal award. Then, the insurer may assert as an affirmative defense lack of coverage, policy limits, or a violation of policy conditions such as fraud, lack of notice, or failure to cooperate.
>
> Under this procedure, if the insurer fails to raise an affirmative defense or the insured defeats the defenses raised in a judicial proceeding, then a valid enforceable judgment is entered and the appraisal award is confirmed. If the insurer is successful asserting its affirmative defense, then no judgment is entered.

Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co., 250 F.Supp.2d 1357, 1362 (M.D. Fla. 2003) (internal footnotes and citations omitted), aff'd, 362 F.3d 1317 (11th Cir. 2004). This Florida procedure is a substantive legal standard that applies in federal diversity cases such as this. See Three Palms Pointe, 362 F.3d at 1318-19 (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

The above procedure illustrates that the district court's judgment in this case is not final for purposes of § 1291. First, under the Florida procedure, a final judgment ending the litigation is one confirming an appraisal award; the district court in this case, however, did not (and could not) enter such a judgment on March 30, as the appraisal process was not yet complete. See Mathis v. Zant, 903 F.2d 1368, 1370 (11th Cir. 1990) ("[A] final judgment for purposes of appealability under section 1291 has always been defined as a judgment that terminates the litigation between the parties on the merits of the case, so that if

11

there should be an affirmance in the court of appeals, the court below would have nothing to do but to <u>execute the judgment or decree it had already rendered</u>.") (emphasis added; quotation and alterations omitted); see also <u>Osterneck v. E.T. Barwick Indus., Inc.</u>, 825 F.2d 1521, 1530 (11th Cir. 1987) ("We may not hear appeals even from fully consummated decisions when they are but steps towards a final judgment into which they merge.").

In addition, and even before the district court could enter a final judgment confirming an appraisal award, the court would have to rule on Zurich's affirmative defenses. Though both parties assert that the district court already rejected Zurich's affirmative defenses on March 30 – thus suggesting that there would be nothing left for the court to do – the record is far from clear on this point. Indeed, while the district court did find that the plaintiffs timely invoked the appraisal clause – effectively disposing of Zurich's defenses of failure-to-fulfill preconditions, waiver, and laches – the court did not resolve Zurich's estoppel defense. See <u>Stillman</u>, 88 F.3d at 914 (holding that, despite the label to the contrary, the district court's judgment was not final because the court "did not even purport to . . . adjudicate [the defendant's] other affirmative defenses").

Similarly, in summarily "reject[ing] defendant/insurer's defenses of fraud precluding appraisal," the court failed to distinguish among, let alone mention,

12

Zurich's various fraud defenses of concealment/misrepresentation, material breach, and unclean hands. Moreover, the court's characterization of Zurich's general fraud defense was not entirely accurate, as Zurich asserted that the plaintiffs' fraudulent conduct precluded <u>coverage</u>, not an appraisal. Furthermore, in discussing Zurich's fraud defense shortly before issuing this ruling, the court suggested, consistent with its earlier order granting Zurich's motion for clarification, that this issue "may be [left] for another day." See <u>State Treasurer of State of Mich. v. Barry</u>, 168 F.3d 8, 14 (11th Cir. 1999) (stating that a stipulation of dismissal without prejudice is not final under § 1291 because "it leaves the dismissed claim for another day").

Moreover, and even if the district court intended to resolve all of Zurich's affirmative defenses on March 30, it did so without allowing Zurich to present evidence in support thereof. In this respect, even the plaintiffs acknowledge that Zurich would be entitled under Florida law to present its affirmative defenses post-appraisal, regardless of whether the district court previously rejected them on March 30. This is a critical fact because the act of receiving and considering evidence would constitute judicial conduct going well beyond the mere execution of a judgment. <u>Cf.</u> <u>World Fuel Corp. v. Geithner</u>, 568 F.3d 1345, 1348 (11th Cir. 2009) (suggesting that a district court order remanding to an administrative agency

13

for "consideration of evidence" is not final under § 1291) (citing MCI Telecomm. Corp. v. BellSouth Telecomm. Inc., 298 F.3d 1269, 1271 (11th Cir. 2002)); Carrillo, 325 F.3d at 1272-73 (explaining that a district court's order is not final under § 1291 where the court's remaining tasks are more than merely "ministerial in nature") (quoting Turner v. Orr, 759 F.2d 817, 820 (11th Cir. 1985)).

Further supporting the conclusion that the court's March 30 judgment is not final is the fact that the court stated in its judgment that it would retain jurisdiction until the end of the appraisal process in case it needed to appoint an umpire. Despite the court's overriding intent to impose a final judgment, this statement nonetheless contemplates additional judicial conduct, taken pursuant to the appraisal clause, which again would go beyond the mere execution of a judgment. See Broussard v. Lippman, 643 F.2d 1131, 1133 (5th Cir. Unit A, Aug. 27, 1981) ("When, as here, a district court anticipates that further proceedings on substantive matters may be required, any order it makes to facilitate those further proceedings is necessarily not final. The order must not merely have the potential to be the final action, it must, in fact, be the final action . . . .") (citation omitted);[3] cf. J.D. Pharm. Distrib., Inc. v. Save-On Drugs & Cosmetics Corp., 893 F.2d 1201, 1208 (11th Cir. 1990) (concluding that the district court's judgment was final because,

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

"notwithstanding the district court's statement that it would 'retain jurisdiction to determine attorneys' fees,' appellants point out that there was no request for attorneys' fees in the complaint, and no provision for attorneys' fees in the contracts at issue").

In sum, the district court had more to do after March 30 in connection with Count One, and, as a result, the judgment entered on that date was not final for purposes of § 1291. Thus, because the court's judgment did not terminate the litigation with respect to all of the claims, and the district court did not certify its judgment for appeal under Fed.R.Civ.P. 54(b), we lack jurisdiction over both the plaintiffs' appeal from the judgment and Zurich's cross-appeal from the judgment. See CSX Transp., Inc. v. City of Garden City, 235 F.3d 1325, 1327 (11th Cir. 2000) ("A judgment that does not effectively terminate the litigation is not final or immediately appealable unless the district court certifies the judgment for immediate appeal under Fed.R.Civ.P. 54(b)."); Smith v. Kemp, 849 F.2d 481, 483-84 (11th Cir. 1988) (dismissing an appeal and a cross-appeal, both taken from the same non-final judgment, because the judgment was not certified under Rule 54(b)). Accordingly, we dismiss the appeal and cross-appeal for lack of jurisdiction.

**APPEAL DISMISSED.**

