UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-61191-CIV-ROSENBAUM/SELTZER

JIN ZHI STAR LT, LLC,
a Florida corporation, and
U.S. CAPITAL/FASHION MALL, LLC,
a Florida corporation,

    Plaintiffs,

v.

AMERICAN ZURICH INSURANCE CO.,
an Illinois corporation,

    Defendant.
_____/

**ORDER**

   This matter is before the Court on Non-parties Gregg D. Scarlett's and Karen C. Bremer's Emergency Motion to Quash Subpoenas [D.E. 329]. The Court has reviewed the Non-parties' Motion; the Responses of Plaintiffs/Counterclaim Defendants Jin Zhi Star LT, LLC; and U.S. Capital Fashion Mall, LLC, and Defendant/Counterclaim Plaintiff American Zurich Insurance Company; the Non-parties' Reply; and the case file. After careful consideration, the Court now ___ the Non-parties' Motion for the reasons set forth below.

***I.  Background***

   This matter involves a dispute over insurance coverage for a mall that was damaged by Hurricane Wilma on October 24, 2005. Following a bench trial held by the Honorable Federico Moreno in this matter, the Eleventh Circuit dismissed the parties' cross-appeals, holding that the

district court's decision following the bench trial was not a final one under 28 U.S.C. § 1291, and, thus, was not appealable. In its decision, the Eleventh Circuit noted that, among other matters, the district court needed to allow Defendant/Counterclaim Plaintiff Zurich to present evidence in furtherance of its affirmative defenses to coverage of Plaintiff/Counterclaim Defendant's insurance claim.

This Court subsequently set the matter for a bench trial beginning on July 16, 2012. Defendant/Counterclaim Plaintiff American Zurich Insurance Company served Non-parties Gregg D. Scarlett and Karen C. Bremer (the "Non-parties") with subpoenas to testify at the trial. In response, the Non-parties filed their pending Emergency Motion to Quash.

In support of their Motion, the Non-parties note that they are not parties or officers to a party in this action. *See* D.E. 329 at 1. Mr. Scarlett lives in Tampa, and Mrs. Bremer, in Clearwater — both outside this district and more than 100 miles from the Court. *Id.* Neither Mr. Scarlett nor Mrs. Bremer regularly conduct business in person in Fort Lauderdale. *Id.* Mr. Scarlett serves as the Senior Vice President of Operations for Outback Steakhouse. *Id.* As such, he is currently scheduled to be in New York at a business meeting of company executives during the trial period. *Id.* at 4. According to Mr. Scarlett, because of his position and his responsibilities of operating 770 restaurants in forty-nine states, his attendance at the meeting is "critical." *Id.*

For her part, Mrs. Bremer is the Vice President of Real Estate for OSI, described by Mrs. Bremer as "one of the world's largest casual dining companies with approximately 86,000 domestic Team Members and more than 1,400 restaurants in 49 states, and 21 countries and territories." *Id.* at 2 n.1. Although Mrs. Bremer does not regularly conduct business in person in Fort Lauderdale, however, Mrs. Bremer is actually scheduled to attend a bankruptcy hearing in Fort Lauderdale on

the morning of July 16, 2012, the first day of trial in the above-captioned case. *Id.* at 5. As it turns out, that hearing will be held in a courtroom on the same floor of the same courthouse where the instant matter will be tried.

Mr. Scarlett and Mrs. Bremer urge the Court to release them from the subpoenas, noting that they both previously testified in actions filed by Cheeseburger-South Florida, Limited Partnership, and Bonefish/South Florida-I Limited Partnership against U.S. Capital in the Circuit Court for the Seventeenth Judicial Circuit, in and for Broward County. *Id.* at 4. Those actions concerned claims arising from each company's restaurant leases at the Fashion Mall, which is the property that the insurance policy at issue in this case is alleged to cover. Accordingly, the Non-parties suggest that their testimony in that action, which regards matters relating to a fraud defense that Defendant/Counterclaim Plaintiff wishes to present, be used as a surrogate for the Non-parties' testimony at the trial set for Monday in the pending case. *Id.*

Defendant/Counterclaim Plaintiff responds that the Non-parties' testimony is "critical" to Defendant/Counterclaim Plaintiff's ability to present its affirmative defense of fraud. *See* D.E. 335. In support of this position, Defendant/Counterclaim Plaintiff points to the Non-parties' testimony in the Broward Circuit Court matter. According to Defendant/Counterclaim Plaintiff, the Non-parties testified that Plaintiff/Counterclaim Defendant U.S. Capital allowed the mall property where the restaurants of the companies for which the Non-parties worked were located to fall into a state of disrepair and that U.S. Capital was "unresponsive" to the requests of the Non-parties' employers for fundamental repairs. *Id.* at 3.

Plaintiffs/Counterclaim Defendants object to the Non-parties' testimony at all, describing it as irrelevant to the issues pending before the Court. *See* D.E. 332. Nonetheless,

Plaintiffs/Counterclaim Defendants offer to stipulate to the authenticity of any exhibits accepted into evidence in the Broward Circuit Court case, although they will not stipulate to their relevancy. *Id.* at 2-3.

Finally, the Non-parties reply that Defendant/Counterclaim Plaintiff Zurich has "vastly overstat[ed]" its need for the testimony of the Non-parties. D.E. 336 at 2. In support of this conclusion, the Non-parties note that on June 13, 2012, Zurich indicated that it had "not decided whether we will actually call [the Non-parties] as witnesses." D.E. 329-1. And, as late as July 5, 2012, Zurich repeated that it was still "in the process of determining whether [the Non-parties'] testimony will be necessary, but are serving them in case we need them." *Id.* Further clarifying, Zurich explained, "If [the Non-parties'] former testimony is allowed, then we may not need them." D.E. 329-2. Indeed, the Non-parties point out, Zurich never even served subpoenas on them at all to testify at the trial when it was set to begin on July 9, 2012.

## *II. Discussion*

This motion requires the Court to consider Rules 45(c)(3)(A)(ii) and (c)(3)(B)(iii), Fed. R. Civ. P., and Rule 45(c)(3)(C). Rule 45(c)(3)(A)(ii) provides,

> On timely motion, the issuing court must quash or modify a subpoena that: (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held.

Rule 45(c)(3)(B)(iii), in turn, states,

> To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires: (iii) a person who is neither a party nor a party's officer to incur

substantial expense to travel more than 100 miles to attend trial. Finally, Rule 45(c)(3)(C) authorizes a court to order appearance under "specified conditions" if both of the following conditions exist: (1) the subpoenaing party demonstrates "a substantial need for the testimony . . . that cannot be otherwise met without undue hardship;" and (2) the subpoenaing party reasonably compensates the subpoenaed person.

Here, both Mr. Scarlett and Mrs. Bremer initially qualify for the protections of Rule 45(c)(3)(A)(ii). Neither is a party or a party's officer, and neither resides, is employed, or regularly transacts business in person within 100 miles of Fort Lauderdale.

Both, however, reside in Florida, where the trial will be occurring. Therefore, the Court must consider whether to exercise its discretion to modify or quash the subpoenas under Rule 45(c)(3)(B)(iii). In making this determination, the Court considers the factor set forth in Rule 45(c)(3)(C) — that is, whether Zurich has shown "a substantial need for the testimony that cannot be otherwise met without undue hardship."[1] While Plaintiff/Counterclaim Defendant asserts that the information that the Non-parties allegedly posses is not relevant, the Court cannot be certain at this time. And, in view of the Eleventh Circuit's directive to ensure that Defendants/Counterclaim Plaintiffs have an opportunity to present their affirmative defenses, the Court cannot find that Zurich lacks a substantial need for the testimony at this time. Because this trial is a bench trial, should the Court conclude after hearing the evidence that it is not relevant, the Court may exclude it then.[2]

---

[1] If the Court finds this to be the case, the Court has no reason to believe that Zurich would not reasonably compensate the Non-parties, as required under Rule 45(c)(3)(C)(ii).

[2] The Court reminds Zurich, however, that Judge Moreno imposed a two-day limit on the presentation of Zurich's case. However Zurich wishes to use that time is up to Zurich, but the Court does not anticipate extending the time allowed.

In the case of Mrs. Bremer, she will be present at the same courthouse where the trial is taking place, at the same time that the trial is proceeding. And, upon inquiry with the presiding bankruptcy judge handling Mrs. Bremer's other matter, this Court is advised that the U.S. Capital proceeding that Mrs. Bremer is attending will be called near the beginning of the bankruptcy court's calendar. Under these circumstances, it is difficult for the Court to understand how requiring Mrs. Bremer to testify at trial in the above-captioned case would impose an undue burden on her. Accordingly, the Non-parties' Motion to Quash is **DENIED** as it regards Mrs. Bremer.

The Court does not reach the same conclusion as it pertains to Mr. Scarlett. Based on his job duties, testimony at trial in this case would impose a substantial burden. While the Court might be willing to require Mr. Scarlett to appear, nonetheless, here, a good alternative exists and the Court need not burden Mr. Scarlett unnecessarily. Mr. Scarlett's testimony from the Broward Circuit Court case is available and will accomplish Zurich's goals. Moreover, U.S. Capital had an opportunity to examine Mr. Scarlett in the Broward Circuit Court case. Under these circumstances, Mr. Scarlett's Broward Circuit Court testimony can be used by Zurich.[3] Consequently, the Non-parties' Motion to Quash is **GRANTED** as it relates to Mr. Scarlett.

### *III. Conclusion*

For the foregoing reasons, Non-parties Gregg D. Scarlett's and Karen C. Bremer's Emergency Motion to Quash Subpoenas [D.E. 329] is **GRANTED IN PART and DENIED IN PART**, consistent with the terms of this Order. In addition, Defendant/Counterclaim Plaintiff may

---

[3]To be clear, the Court notes that the rulings in this Order do not constitute rulings on relevancy. Upon hearing the testimony at issue, the Court will make an independent judgment regarding its relevancy.

offer the Broward Circuit Court testimony of Gregg D. Scarlett at trial.

      **DONE and ORDERED** at Fort Lauderdale, Florida, this 13th day of July 2012.

                                                            */s/ Robin S. Rosenbaum*
                                                            ROBIN S. ROSENBAUM
                                                            UNITED STATES DISTRICT JUDGE

cc:       The Honorable Alicia Otazo-Reyes
           Counsel of Record